ORIGINAL

FILED

08 NOV 26 PM 12:52

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1  HULETT HARPER STEWART LLP
   KIRK B. HULETT, SBN: 110726
2  550 West C Street, Suite 1600
   San Diego, CA  92101
3  Telephone:   (619) 338-1133
4  Facsimile:   (619) 338-1139

5  Attorneys for Plaintiff, Robert E. Becker
   [Additional Counsel on Signature Page]
6

7

8            IN THE UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 ROBERT E. BECKER, Individually and On Behalf of All Others Similarly Situated,<br><br>11<br><br>12                          Plaintiff,<br><br>13 v.<br><br>14 SPACEDEV, INC., MARK N. SIRANGELO, RICHARD B. SLANSKY,<br>15 SCOTT TIBBITTS, CURT DEAN BLAKE, HOWELL M. ESTES III, SCOTT<br>16 McCLENDON, ROBERT S. WALKER, HANS J. STEININGER, G. SCOTT<br>17 HUBBARD and PATRICIA G. SMITH,<br>18                          Defendants. | Case No. 08 CV 2199 L CAB<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

CR

Plaintiff, by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This class action is brought on behalf of the public common shareholders of SpaceDev, Inc. ("SpaceDev" or the "Company"), against SpaceDev and its Board of Directors (the "Board" or the "Individual Defendants) (collectively, the "Defendants"), alleging violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder by the United States Securities and Exchange Commission ("SEC").

2. Specifically, the Individual Defendants have attempted to solicit shareholder proxies in support of the Company's proposed sale to Sierra Nevada Corporation ("Sierra Nevada") and SDV Acquisition Corp. ("SDV") (the "Proposed Acquisition") with the issuance of a definitive proxy statement on November 21, 2008 (the "Proxy") that contains omissions of material fact concerning, *inter alia*, (i) the process resulting in the Proposed Acquisition, including the alternative transactions that the Board considered; (ii) the negotiation of the terms of the Proposed Acquisition, including the deal protection devices at issue; and (iii) the analyses that the Company's financial advisor, Cowen and Company, LLC ("Cowen"), rendered in connection with the Proposed Transaction.

3. Accordingly, this action seeks to enjoin the Proposed Acquisition and require Defendants to disseminate an accurate and complete Proxy that fully and fairly informs shareholders of all material information in a non-misleading manner.

## JURISDICTION AND VENUE

4. The claims asserted herein arise under Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)]. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.

5. Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein. In addition, SpaceDev maintains its

principal executive offices in California.

## THE PARTIES

6. Plaintiff, Robert Becker, is and has been the owner of SpaceDev common stock continuously since prior to the wrongs complained of herein.

7. Defendant SpaceDev is a Delaware corporation with its principal executive offices located in Poway, California. The Company, together with its subsidiaries, engages in the conception, design, development, manufacture, integration, sale, and operation of space technology systems, subsystems, products, and services. SpaceDev's common stock trades on the Over the Counter Bulletin Board under the ticker symbol "SPDV.OB." As of August 14, 2008, there were 42,451,963 shares of SpaceDev common stock outstanding.

8. Defendant Mark N. Sirangelo ("Sirangelo") is and has been a SpaceDev director since 2005. Sirangelo was appointed the Company's Vice Chairman and Chief Executive Officer ("CEO") in December 2005 and is currently serving as CEO and Chairman of the Board. Sirangelo became Chairman in September 2006 upon the resignation of James W. Benson ("James Benson"), a SpaceDev founder who remained a member of the Board until his death in October 2008. Sirangelo was a member of QS Advisors, LLC ("QS Advisors") and The QuanStar Group LLC, both of which served as business advisors to SpaceDev. In connection with the Company's merger with Starsys Research Corporation in January 2006 (the "Starsys Merger"), QS Advisors received $200,000 in cash and 250,000 shares of SpaceDev's common stock.

9. Defendant Richard B. Slansky ("Slansky") is and has been a SpaceDev director since 2004. Slansky joined the Company in February 2003 as its Chief Financial Officer ("CFO") and Corporate Secretary. In November 2004, Slansky was appointed as the Company's President and was elected to the Board.

10. Defendant Scott Tibbitts ("Tibbitts") is and has been a SpaceDev director since 2006. Tibbitts was appointed as the Company's Managing Director and a director at the closing of the Starsys Merger. In addition, Tibbitts has received lucrative "non-compete" payments pursuant to the terms of a January 31, 2006 agreement between him and the Company.

11. Defendant Curt Dean Blake ("Blake") is and has been a SpaceDev director since 2000. In addition, according to the Company's most recent Annual Proxy Statement filed with the United States Securities and Exchange Commission on Form DEFR14A on June 27, 2007 (the "2007 Proxy"), Blake is a Chairman of the Company's Audit Committee and is a member of the Compensation Committee.

12. Defendant Howell M. Estes, III ("Estes") is and has been a SpaceDev director since 2001. In addition, according to the 2007 Proxy, Estes is Chairman of the Company's Nominating and Corporate Governance Committee and is a member of the Compensation Committee.

13. Defendant Scott McClendon ("McClendon") is and has been a SpaceDev director since 1999. According to the 2007 Proxy, McClendon is a member of the Company's Audit Committee and the Nominating and Corporate Governance Committee.

14. Defendant Robert S. Walker ("Walker") is and has been a SpaceDev director since 2001. According to the 2007 Proxy, Walker is a member of the Company's Nominating and Corporate Governance Committee.

15. Defendant Hans J. Steininger ("Steininger") is and has been a SpaceDev director since 2007. Steininger was appointed Chief Executive Officer of MT Aerospace AG ("MT") in June 2007 and served as its Chief Financial Officer for the period between July 2005 and May 2007. He is also a co-investor of MT. MT is a subsidiary of OHB Technology AG (collectively, "OHB"), a substantial SpaceDev shareholder. Steininger was nominated and elected to the Board in 2007 pursuant to an agreement entered into between the Company and OHB when OHB acquired its initial interest in the Company.

16. Defendant G. Scott Hubbard is and has been a SpaceDev director since 2007.

17. Defendant Patricia G. Smith is and has been a SpaceDev director since 2008.

18. Each of the Individual Defendants at all times had the power to control and direct SpaceDev to engage in the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on his own behalf and as a class action on behalf of all

3

common shareholders of SpaceDev (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Excluded from the Class are defendants, the current and former officers and directors of any of the defendants, and, with respect to any of the foregoing, the members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20. This action is properly maintainable as a class action. For example, the Class is so numerous that joinder of all members is impracticable. As of August 14, 2008, there were 42,451,963 publicly held shares of SpaceDev common stock outstanding, held by scores, if not hundreds, of individuals and entities scattered throughout the country. Record owners and other members of the Class may be identified from records maintained by SpaceDev or its transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21. There are questions of law and fact that are common to the Class and predominate over questions affecting any individual members of the Class. These questions include, *inter alia*, the following: (i) whether the Proxy contains materially false and/or misleading statements and omissions in violation of Section 14(a) of the Exchange Act; and (ii) whether Plaintiff and the other members of the Class would be irreparably injured in the absence of injunctive relief requiring defendants to issue additional disclosures to shareholders to render certain of the statements in the Proxy complete and otherwise non-misleading.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or

impede their ability to protect their interests. As such, a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

24. Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, and final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

25. On October 20, 2008, SpaceDev issued a press release in which it announced that it had signed a definitive merger agreement to be acquired by Sierra Nevada in the Proposed Acquisition (the "Merger Agreement"). As the press release indicates, the final amount of cash consideration payable to shareholders in the Proposed Acquisition "will vary based upon, among other things, the amount of such expenses actually incurred by the Company and the effect, if any, of certain adjustment provisions set forth in the Merger Agreement." In addition, certain SpaceDev officers, directors, institutional shareholders, and principal security holders who beneficially own an aggregate of approximately 37% of the Company's common stock have entered into voting and holder agreements with Sierra Nevada, pursuant to which they have agreed to vote their shares in support of the Proposed Acquisition and against any alternate transaction, including a superior transaction.

26. On November 21, 2008, SpaceDev filed the Proxy in furtherance of soliciting shareholder support for the Proposed Acquisition. As alleged herein, the Proxy fails to disclose highly material information necessary for SpaceDev's public shareholders to make an informed decision regarding the Proposed Acquisition.

27. For example, the Proxy indicates that on September 12, 2008, the Individual Defendants had an extended special meeting to discuss the potential acquisition of the Company by Sierra Nevada for a gross purchase price of $42.5 million, a value that had declined from an initial offer of $44 million made in May 2008. Consistent with its initial deliberations, Cowen presented its financial analysis of the transaction and the industry opined that the transaction was fair to the holders of the Company's common stock.

28. Despite the apparent readiness of the parties to execute the merger agreement approved on September 12, 2008, beginning in late September, Sierra Nevada indicated that it would no longer agree to the previously agreed upon offering price. On September 25, 2008, Sierra Nevada indicated to the Company that it was updating its internal valuation and assumptions "based upon the most recent due diligence and external market conditions (i.e., the worldwide financial and credit markets downturn) and expressed that they would need to update their assessment of the initial valuation proposition."

29. On October 1, 2008, Sierra Nevada and defendants Sirangelo and Slansky met in person to discuss information provided by the Company in response to Sierra Nevada's additional due diligence requests, the complete overall SNC assessment of the Company's current and future expected financial position and the potential value of the integrated companies. Notably, the parties also "discussed at length the external market and global financial crisis and environment." At the meeting, Sierra Nevada indicated that based on its assessment of these issues, it could not maintain its previous valuation model and indicated that it would provide a revised offer to the Company. Between October 3 and 8, 2008, Sierra Nevada and defendant Sirangelo negotiated a revised price. Among these exchanges was an email provided from defendant Sirangelo to Sierra Nevada that contained a counter-offer with the price reduced by 5% "to address the new market and financial conditions."

30. In short, in a little over one month, the Company agreed to a decrease in the value of the Company of approximately 10.5%. The Proxy fails to detail or summarize the additional financial data that purported, in part, to form the basis of the revaluation from the agreed upon price on September 12, 2005. In fact, the Proxy seemingly indicates the decrease was due to external concerns related to the macro-economic environment and financial crises.

31. On October 10, 2008, the Individual Defendants met and discussed the revised offer and agreed to hold a formal meeting. The Proxy indicates that during this meeting, "Cowen made a preliminary observation that it appeared that the evaluations of comparable companies and transactions had declined in the current financial market's turmoil, proportionately more than SNC's proposed acquisition price had declined."

6

32. On October 20, 2008, the Individual Defendants held a meeting to consider the revised offer, at which it "received an extensive updated briefing from Cowen, including a detailed review of their financial analysis of the transaction and the industry." After Cowen rendered a favorable fairness opinion on the Proposed Acquisition, the Individual Defendants unanimously voted to approve the Company's entry into the Proposed Acquisition.

33. Although Cowen's presentation and financial analyses were of the utmost importance to the Board, however, the Proxy fails to provide shareholders with a fair or complete summary of those analyses. For example, the Proxy does not disclose, *inter alia*, the following information:

    a. The Company's reason for failing to contact potential financial buyers that could have been interested in acquiring the Company or engaging in a transaction, as well as the Company's reason for failing to perform a dedicated pre-or-post market check;

    b. The Company's engagement of Cowen as well as the scope of Cowen's responsibilities as SpaceDev's financial advisor;

    c. Cowen's rationale for considering an adjusted merger consideration of $0.68 per common share in its analyses when the range offered to shareholders in connection with the Proposed Acquisition starts at $0.70 per common share;

    d. Cowen's rationale for limiting certain of its analyses to EBITDA and revenue multiples as opposed to other financial figures that are material to shareholders;

    e. With respect to the *Analysis of Premiums Paid in Selected Transactions*: (i) the manner in which Cowen selected the transactions it considered in connection with this analysis; (ii) a range of multiples for this analysis, other than simply the mean and median results; and (iii) the manner in which Cowen calculated "the implied stock prices for SpaceDev resulting from the application of the premiums" considered from the selected industry transactions.

    f. With respect to the *Analysis of Selected Transactions*: (i) the criteria that Cowen employed to select the transactions considered, including Cowen's rational for not considering any transactions that occurred after July 15, 2008; (ii) a range of multiples for this analysis, other than simply the mean and median results; and (iii) an explanation of the "complex

considerations and judgments concerning differences in historical and projected financial and operating characteristics of the companies" selected, as well as the "other factors that could affect the acquisition value of such companies or SpaceDev to which they are being compared."

   g. With respect to the *Analysis of Selected Publicly Traded Companies*: (i) the basis for Cowen's belief that the selected companies "have operating, market valuation and trading valuations similar to what might be expected of SpaceDev"; (ii) a range of multiples for this analysis, other than simply the mean and median results; and (iii) the sources of the Wall Street analyst research reports that Cowen considered, as well as the specific analysts whose reports Cowen considered and the specific reports.

   h. With respect to the *Historical Stock Trading Analysis*: the manner in which Cowen "derived" the per share merger consideration and adjusted merger consideration amounts.

   i. With respect to the *Discounted Cash Flow Analysis*: (i) the financial information underlying this analysis; (ii) the discounted present value of the projected after-tax cash flows of SpaceDev provided by management of SpaceDev for the fiscal years ended 2008 through 2012; (iii) the terminal value of SpaceDev at December 31, 2012; (iv) why Cowen calculated a range of terminal multiples of EBITDA for SpaceDev based on the general range of multiples of EBITDA for the "selected companies" considered in that analysis; (v) the discount rates that Cowen used between the range of 20% and 30%, as well as the basis for Cowen's use of those rates; (vi) the estimated industry weighted average cost of capital that Cowen purportedly considered; and (vii) the calculations that resulted in an implied per share equity value of SpaceDev common stock ranging from $0.69 to $1.01 per share.

   j. With respect to the *Leveraged Buyout Analysis*: (i) the manner in which Cowen performed this analysis; (ii) Cowen's basis and rationale for assuming internal rates of return in excess of 30% and terminal multiples of 7.0x to 8.0x estimated 2012 EBITDA; and (iii) Cowen's reason for performing this type of analysis.

  34. These omissions are compounded by the failure of the Proxy to fully discuss the various valuations of the Company that were considered during extensive negotiations and discussions concerning potential business combinations between itself and an international

8

aerospace company with operations in the U.S. that occurred over a year long period beginning in late 2007 and ending in the fourth quarter of 2008. Although these discusses purportedly halted due to international owner concerns of Company E, and changes within Company E, the valuations, if any, placed upon SpaceDev during these discussions would serve as an effective cross-check mechanism for shareholders to determine the fairness of the instant Merger Agreement.

35. The Proxy also fails to disclose sufficient information regarding the steps that the Company or its financial advisors took in attempting to maximize shareholder value. The Proxy indicates that the Company and Sierra Nevada engaged in discussions regarding a strategic relationship for months, during which time it became increasingly apparent that Sierra Nevada management viewed the Company as an attractive acquisition candidate. Despite these facts, the Proxy is silent as to why neither the Company nor its financial advisors took any steps to perform a formal market check. Moreover, to the extent the Company or its financial advisors undertook any informal canvas, the Proxy fails to discuss who was contacted, including whether any discussions with either strategic or financial buyers ever took place.

36. Further, although the Proxy indicates that Cowen and the Individual Defendants considered various strategic alternatives available to SpaceDev, it only identifies two such alternatives (negotiating with Sierra Nevada and remaining independent). The Proxy is silent regarding any other potential strategic alternatives, including limited equity investments and other means to raise capital and increase liquidity. Moreover, with respect to remaining independent, the Proxy is silent as to how strong an option that actually was for the Company, and whether more value for shareholders could be garnered through that course of conduct, considering the significant prospects for the Company set forth herein.

37. In addition, SpaceDev's recently reported strong third-quarter financial results, raising the question of whether the Proposed Acquisition undervalues the Company and whether the Individual Defendants have disclosed enough information to shareholders to permit them to ascertain the true value of the Company. On November 13, 2008, the Company announced its financial results for the three and nine months ended September 30, 2008, reporting "year to date

revenues of approximately $28.3 million, an increase of over 11.6%, net income for the nine months of almost $500,000 and Adjusted EBITDA of approximately $2.1 million for the same nine month period." Specifically, SpaceDev reported the following favorable financial results:

> Revenue – SpaceDev reported revenue of approximately $9.0 million and $28.3 million for the three and nine months ended September 30, 2008, an increase of approximately $1.4 million and $3.0 million, or 18.9% and 11.7% for the three and nine month periods respectively, from the approximate $7.6 million and $25.3 million in revenue reported for the same three and nine month periods in 2007.
>
> Income from Operations – SpaceDev realized income from operations of approximately $348,000 and $586,000 in the three and nine months ended September 30, 2008, which included approximately $164,000 and $420,000 for stock option expense, compared to an operating income of $164,000 and $539,000 for the same three and nine months in 2007, which included approximately $90,000 and $302,000 for stock option expense. In addition and included as operating expenses, the Company increased by 135% its investment in R&D, investing year to date over $623,000 in 2008 compared to $265,000 in 2007.
>
> Net Income – Net income for the three and nine months ended September 30, 2008 was approximately $293,000 and $498,000 respectively, compared to approximately $58,000 and $214,000 for the same three and nine month periods in 2007 with $0.00 earnings per share for both quarters and earnings per share of $0.01 for the nine months to date in 2008 and $0.00 for 2007.
>
> Cash Position – At September 30, 2008, SpaceDev's cash position, which included cash reserves and cash available for investment, was approximately $5.8 million compared to approximately $6.5 million at December 31, 2007. The change is primarily due to the repurchase of preferred stock of $1,368,000 year to date. The Company's current ratio improved to 2.11 (at September 30, 2008) from 2.04 (at September 30, 2007).
>
> Adjusted EBITDA
>
> During the three and nine months ended September 30, 2008, SpaceDev's Adjusted EBITDA was approximately $0.9 million, or 10.0% of net sales, and $2.1 million or 7.4% of net sales, respectively, compared to an adjusted EBITDA of $0.5 million, or 6.6% of net sales, and $1.4 million, or 5.5% of net sales, for the same three and nine months in 2007.

38.   Accordingly, SpaceDev has exhibited an ability to weather challenging market conditions and report favorable financial results, raising the question of whether the Proxy adequately informs investors of the Company's true value or the Board's entire rationale for electing to pursue the Proposed Acquisition as opposed to other alternatives, including remaining independent.

## COUNT I

### Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Acquisition.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Acquisition.

## PRAYER

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A. Declaring that this action is properly maintainable as a class action, certifying Plaintiff as a Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

| | |
|---|---|
| 1 | C. Enjoining the Proposed Acquisition until Defendants remedy the Proxy's material deficiencies and otherwise render the statements contained therein complete and non-misleading; |
| 3 | D. Awarding Plaintiff the costs and disbursements of this action, including a reasonable allowance for Plaintiff's attorneys and experts' fees; and |
| 5 | E. Granting such other and further relief as the Court may deem just and proper. |

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 26, 2008

HULETT HARPER STEWART LLP
KIRK B. HULETT

*/s/ K. Hulett*

KIRK B. HULETT

550 West C Street, Suite 1600
San Diego, CA 92101
Telephone:   (619) 338-1133
Facsimile:     (619) 338-1139

Attorneys for Plaintiff, Robert E. Becker

OF COUNSEL:

RIGRODSKY & LONG PA
SETH D. RIGRODSKY
BRIAN D. LONG
MARK S. REICH
JOSEPH RUSSELLO
919 North Market Street, Suite 980
Wilmington, DE 19801
Telephone:   (302) 295-5310
Facsimile:   (302) 654-7530

THE ROSEN LAW FIRM P.A.
LAURENCE ROSEN
PHILIP KIM
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone:   (212) 686-1060
Facsimile:   (212) 202-3827

**EXHIBIT A**

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. and Rigrodsky and Long PA to file an action under the federal securities laws to recover damages and to seek other relief against SpaceDev, Inc. ("SpaceDev"), its current and former officers and directors. The Rosen Law Firm, P.A. and Rigrodsky and Long P.A. agree to prosecute the action on a contingent fee basis and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed the complaint against SpaceDev and certain of its officers and directors and I retain the Rosen Law Firm P.A. and Rigrodsky and Long LLP in this action for all purposes.

2.  I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.  I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.  I am the current owner of 50,000 shares of SpaceDev common stock. I have owned these 50,000 shares of SpaceDev common stock since July 8, 2008. I first purchased SpaceDev stock on October 27, 1997. I have never sold any of my SpaceDev stock.

5.  I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.  I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25 day of November 2008.

Signature: _____
Name:    Robert E. Becker

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

**I. (a) PLAINTIFFS**
ROBERT E. BECKER, Individually and On Behalf of All Others Similarly Situated

**(b)** County of Residence of First Listed Plaintiff  Lexington Cnty, SC
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Hulett Harper Stewart, LLP 550 west C St., Ste 1600, San Diego CA 92101 Tel: 619/338-1133

**DEFENDANTS**
SPACEDEV, INC., et al. (See Attached List)

FILED
08 NOV 26 PM 12: 52
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: ___ DEPUTY

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
'08 CV 2199 L CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC sec 78n(a)
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 11/26/2008
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 157450  AMOUNT 350.00  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

jm 11/26/08

CR

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 157450        - SR

November 26, 2008
12:54:48

Civ Fil Non-Pris
USAO #.: 08CV2199-L CIV. FIL.
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC#7304

Total-> $350.00

FROM: BECKER V. SPACEDEV, INC
      CIVIL FILING
      08CV2199-L